IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| T.Y., *as Parent and Next Friend of* P.Y., a Minor, | |
| **Plaintiff,** | |
| v. | Case No. 17-2589-DDC-GEB |
| SHAWNEE MISSION SCHOOL DISTRICT USD 512, et al., | |
| **Defendants.** | |

## MEMORANDUM AND ORDER

Plaintiff T.Y. alleges that his daughter, P.Y., was sexually assaulted by another student at her school.  Plaintiff brings this lawsuit against defendant Shawnee Mission School District USD 512 (the "District") and defendants Jim Hinson, Jeremy McDonnell, Jade Peters, and Craig Denny, in their individual capacities (collectively, the "individual defendants"), for their actions before and after the alleged sexual harassment.  Plaintiff asserts four claims against defendants— two against the District and two against all defendants.  Plaintiff asserts that the District violated Title IX of the Education Amendments of 1972 ("Title IX"), 20 U.S.C. § 1681 *et seq*. and 42 U.S.C. § 1983 when it denied P.Y. substantive due process through policy, custom, and practice.  And Plaintiff asserts claims against all defendants under § 1983 for allegedly violating the Equal Protection and Due Process Clauses of the Fourteenth Amendment.

Defendants ask the court to dismiss all four of plaintiff's claims under Rule 12(b)(6) for failing to state a claim.  In Section III, below, the court discusses defendants' arguments and plaintiff's responses.  The court concludes that the Complaint sufficiently alleges facts to state

claims in Counts I, II, and IV, but fails to do so in Court III.  And so, the court grants defendants' motion in part and denies it in part.[1]

## I.    Facts

The following facts are taken from plaintiff's Second Amended Complaint (Doc. 18). For brevity's sake, the court refers to this pleading as "the Complaint" and accepts the facts it asserts as true and views them in the light most favorable to plaintiff.  *Burnett v. Mortg. Elec. Registration Sys., Inc.*, 706 F.3d 1231, 1235 (10th Cir. 2013) (citing *Smith v. United States*, 561 F.3d 1090, 1098 (10th Cir. 2009)).

### A.    Assault and Investigation

During the 2016–2017 school year, P.Y. was enrolled in the eighth grade at Westridge Middle School ("Westridge") in the Shawnee Mission School District.  Around February 28 or March 1, 2017, P.Y.—with other students—was assigned to a study hall in one of the school's classrooms.  During study hall, P.Y. sat next to a male student, A.H.  At some point during study hall, A.H. forcibly put his hands down P.Y.'s pants and penetrated her.  P.Y. was shocked and frightened; she froze and did not react immediately.  Two teachers were assigned to supervise study hall and both were in the room when A.H. allegedly sexually assaulted P.Y.

At some time between March 1 and 3, 2017, Westridge school officials—including Principal Jeremy McDonnell and Assistant Principal Jade Peters—learned about A.H.'s alleged sexual assault on P.Y.  School Resource Officer ("SRO") Dana Harrison—a law enforcement

---

[1]    Defendants request oral argument on their Motion to Dismiss.  Doc. 21 at 1.  D. Kan. Rule 7.2 provides, "The court may set any motion for oral argument or hearing at the request of a party or on its own initiative."  The discretion to conduct oral argument rests with the court.  The court concludes that oral argument will not materially aid in the resolution of defendants' motion and thus is unnecessary.  The court therefore denies defendants' request.

officer stationed at Westridge—also learned about the alleged sexual assault and took P.Y.'s statement.

During SRO Harrison's investigation, he told P.Y.'s mother that A.H. allegedly had made unwelcome physical contact with at least three other female students before he did so with P.Y. SRO Harrison told P.Y.'s mother that he first learned about this physical contact with others when he looked at the student file for A.H. Other female students had complained to the District about this physical contact, leading to the documentation in A.H.'s student file. SRO Harrison told P.Y.'s mother that he never had seen so many complaints about a boy as young as A.H.

Assistant Principal Peters also told P.Y.'s mother that she knew A.H. allegedly had assaulted other female students before P.Y.'s complaint. A policy of the District's known as "JCE" requires the building principal to be informed about any complaint about sexual discrimination or sexual harassment against any student at the principal's school. And so, Principal Jeremy McDonnell also knew or should have known about the other allegations against A.H.

During one of the prior episodes, A.H. talked to a female student in a sexually suggestive manner and touched her in an unwelcome manner. Another episode involved A.H. touching a female student's buttocks. During another episode, A.H. took a female student's cell phone. When she tried to retrieve the phone from him, he pinned her to a wall and groped her in an unwelcome manner.

By March 3, 2017, SRO Harrison had filed a police report with the Johnson County District Attorney's Office about A.H.'s assault of P.Y. At that same time, SRO Harrison also informed the District Attorney's Office about the other prior allegations against A.H. In early March 2017, a representative of the District Attorney's Office told P.Y.'s mother that SRO

Harrison did not know about these prior allegations against A.H., and that a detective would investigate those allegations. Around March 8, 2017, the Johnson County District Attorney's Office filed a charge of "aggravated indecent liberties with a minor" against A.H. based on the alleged sexual assault of P.Y.

### B.    A.H.'s Suspension and Board of Education Meeting

Around Friday, March 3, 2017, Assistant Principal Peters informed P.Y.'s mother that the District would suspend A.H. for 10 days. The District's spring break was scheduled for Monday, March 13, 2017 through Friday, March 17, 2017. Ms. Peters initially informed P.Y.'s mother that she anticipated A.H. would return from his suspension on March 20, 2017—the Monday after the District's spring break. And so, the District evidently intended to allow A.H. to count spring break days during the week of March 13 through 17 toward his ten-day suspension. Westridge previously had suspended P.Y. for an unrelated event, and the school did not let her count non-school days toward her suspension.

P.Y.'s mother was upset that the District might allow A.H. to return to school, and contacted Ms. Peters to request that the District expel A.H. P.Y.'s mother contacted Ms. Peters before and during spring break to determine whether A.H. would be returning to school after spring break. At that time, Ms. Peters told P.Y.'s mother that she could not say—definitively— whether the District would permit A.H. to return to school after his suspension. Around March 17, 2017, Ms. Peters requested information from P.Y.'s mother about the criminal charges filed against A.H. P.Y.'s mother referred her to the Johnson County District Attorney's Office. Around March 20, 2017, P.Y.'s mother contacted Westridge again and requested that A.H. not be permitted to return to school. In response, P.Y.'s mother received notice that A.H. would not

return to the school for the remainder of the 2016–2017 school year. But she also was advised that A.H. would be permitted to return in about six months when the next school year began.

On March 27, 2017, P.Y.'s mother attended a public Board of Education meeting for the District. Before the meeting began, she met and introduced herself to Craig Denny, Vice-President of the District's Board of Education. She told Mr. Denny about her daughter's sexual assault. During the Board of Education meeting that followed, P.Y.'s mother spoke about her daughter's sexual assault and the prior allegations against A.H. She requested better protection for students' safety by the District. The District's Superintendent, Jim Hinson, attended and thus knew about P.Y.'s allegations.

Also, during this Board of Education meeting, P.Y.'s mother hand-delivered a letter to the District Board of Education. Specifically, she addressed the letter to "Craig Denny" and also to the other board members, generally. In the letter, P.Y.'s parents informed Mr. Denny and the Board of Education about the sexual assault their daughter had suffered at Westridge, and also explained that the school knew about the earlier incidents of alleged misconduct by A.H. against other female students. But the letter explained that SRO Harrison only had learned about A.H.'s prior episodes while interviewing individuals about P.Y.'s assault. Specifically, P.Y.'s parents wrote, "It was at that time, during Officer Harrison's interviews that the school then made it known that [A.H.] had 3 previous complaints" against him.

P.Y.'s parents used the letter to inform the Board of Education that the Johnson County District Attorney's Office had charged A.H. with aggravated indecent liberties with a child, based on his alleged assault of P.Y. P.Y.'s parents also explained that the District Attorney's Office told them that "since the school had not reported [A.H.'s earlier misconduct] prior to now an investigation will be done and additional charges are likely." Finally, the letter referenced an

article published by *The Kansas City Star* on October 3, 2016.  The article reported that a charge of sexual assault was filed against a male student from another school within the District, and attached a copy of the article to the letter to the Board of Education.

This article reported that a male student at Shawnee Mission East High School allegedly sexually assaulted two other students in September 2016 and exposed himself to a third student in April 2015.  He allegedly victimized one of the female students twice.  That male student was charged with three felony counts of aggravated indecent liberties with a child and one felony count of lewd and lascivious behavior, according to the article.  The charges involved "lewd fondling or touching"—just like the charges against A.H. for his sexual assault of P.Y.  In the article, the Johnson County District Attorney, Stephen Howe, confirmed the District had not reported the April 2015 incident to his office, and that he "cannot explain the reason why."  The District Attorney's Office, however, filed charges for the April 2015 incident once they knew about it.

On or around April 4, 2017, P.Y.'s mother received a response from the Board of Education.  This response included policies and information about certain topics raised by individuals during the Board meeting.  But the response did not address the concerns raised by P.Y.'s mother directly.

Also on April 4, 2017, the District Attorney's Office filed an Amended Complaint in the pending criminal matter against A.H.  The amendment added three additional battery charges (each a class B person misdemeanor) charging A.H. with making unwelcome contact with female students on three separate occasions.  One charge alleged that A.H.'s conduct spanned from December 1 through December 31, 2016, another alleged an incident occurred on February 23, 2017, and the third claimed an incident occurred on February 24, 2017.

### C.    A.H. Convicted for His Actions Against P.Y. and Others

In December 2017, the four charges against A.H. proceeded to trial in Johnson County, Kansas.  At the trial, three other students, all female and all alleged victims, testified about batteries before P.Y.'s alleged assault.  Specifically, one victim testified that A.H. took her cell phone and retreated to the stairwell with it, presumably to lure her there.  After she followed him into the stairwell, A.H. allegedly pinned her to the wall and groped her.  Another victim testified that A.H. had engaged in a pattern of ongoing, unwanted contact with her—specifically while the two were on the school bus.  The unwanted contact occurred so often, she testified, that she developed a warning system she used with the bus driver.  The victim would make a signal—a wink or nod—to inform the bus driver that she wanted to be separated from A.H.  This behavior occurred in December 2016—before P.Y.'s alleged assault.  P.Y. also testified about the sexual assault she endured.  The court found A.H. guilty on four charges.  A.H.'s sentencing hearing occurred on January 10, 2018.  The court sentenced A.H. to seven days in a juvenile facility, 21 days of house arrest, 12 months of probation, and placement on the sex offender registry.

P.Y. has experienced difficulty talking about the assault because she feels shame and fear.  To date, defendants have not offered P.Y. counseling or any other type of mental health services.  Plaintiff alleges that because of the sexual assault, and defendants' failure to prevent the assault and otherwise take appropriate remedial actions, P.Y.'s grades have suffered and she has sustained emotional distress.  For example, following the assault, once, P.Y. went out to eat with her family and saw A.H. at the restaurant.  This upset P.Y. a great deal.  The Complaint in this case alleges that P.Y. has experienced emotional distress caused by defendants' acts and omissions—particularly the omissions by Principal McDonnell and Vice Principal Peters.  It also

alleges that P.Y. struggles to go out in public, even with her family, for fear of running into A.H. again.

### D.    District Policies

The District has policies and procedures in place to prevent and remedy harassment, discrimination, and violence.  Under those policies, the District must take appropriate action to prevent, address, investigate, and remedy such harms.  Specifically, one policy in the Westridge student handbook provides:

> **Harassment** Discrimination on the basis of race, ethnicity, disability, religion, or sex in educational institutions will not be tolerated.  Such behavior is inappropriate and in violation of Board Policy JCE.  All complaints of harassment will be thoroughly investigated and resolved in a prompt and equitable manner.  All complaints will be confidential, and reported to the appropriate authorities. Violations of this policy will be treated as serious disciplinary infractions and may result in suspension or expulsion.

Doc. 18 at 13.  Likewise, the District handbook provides:

> **Harassment**: Discrimination on the basis of race, ethnicity, disability, religion, or sex in educational institutions will not be tolerated.  Such behavior is inappropriate and in violation of Board Policy JCE.  All complaints of harassment will be thoroughly investigated and resolved in a prompt and equitable manner. All complaints will be confidential, and reported to the appropriate authorities. Violations of this policy will be treated as serious disciplinary infractions and may result in suspension or expulsion.

*Id.* at 14.  And, the District Policy known as the JCE provides:

> The district is committed to maintaining a working and learning environment free from discrimination, insult, intimidation, or harassment due to race, color, religion, sex, age, national origin, or disability.

> Any incident of discrimination including acts of discriminatory harassment shall promptly be reported for investigation and corrective action by the building principal or deputy superintendent. Any student who engages in discriminatory conduct shall be subject to disciplinary action, up to and including expulsion from school.

> Discrimination and discriminatory harassment against any student on the basis of race, color, national origin, sex, disability, or religion in the admission or access to,

or treatment in the district's programs and activities is prohibited. The deputy superintendent, who may be reached at 8200 W. 71st Street, Shawnee Mission, Kansas, 66204 or at (913) 993-6413, has been designated to coordinate compliance with nondiscrimination requirements contained in Title VI of the Civil Rights Act of 1964, Title IX of the Education Amendments of 1972, Section 504 of the Rehabilitation Act of 1973, and The Americans with Disabilities Act of 1990.

Complaints About Discrimination, Harassment, or Bullying
Any student who believes that he or she has been discriminated against, harassed, or bullied may file a complaint with the building principal, another administrator, the guidance counselor, or another certified staff member.  Any school employee who receives a complaint of discrimination, harassment, or bullying from a student shall inform the student of the employee's obligation to report the complaint and any proposed resolution of the complaint to the building principal.  If the building principal is the alleged harasser, the report shall be made to the deputy superintendent.  Any student complaint of discrimination shall be resolved under the district's discrimination complaint procedures.

*Id.* at 14–15. Finally, the District also has adopted a policy about "Disciplinary Action for Misconduct." It provides:

**Disciplinary Action for Misconduct**:  The school principal, or his/her designee, is authorized to temporarily exclude a student from class, short-term suspend a student from school, recommend long-term suspension or expulsion for up to and including 186 school days.

*Id.* at 16. This policy specifically cites "sexual harassment" as one type of misbehavior allowing the District to take disciplinary measures.

## II.    Legal Standard

Fed. R. Civ. P. 8(a)(2) provides that a Complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  Although this Rule "does not require 'detailed factual allegations,'" it demands more than "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action'" which, as the Supreme Court explained, "will not do." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

For a Complaint to survive a motion to dismiss under Rule 12(b)(6), the pleading "must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 679 (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678 (citing *Twombly*, 550 U.S. at 556). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556); *see also Christy Sports, LLC v. Deer Valley Resort Co., Ltd.*, 555 F.3d 1188, 1192 (10th Cir. 2009) ("The question is whether, if the allegations are true, it is plausible and not merely possible that the plaintiff is entitled to relief under the relevant law." (citation omitted)).

When assessing whether a plaintiff has stated a plausible claim, the court must assume that the factual allegations in the complaint are true. *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555). But the court is "'not bound to accept as true a legal conclusion couched as a factual allegation.'" *Id.* (quoting *Twombly*, 550 U.S. at 555). "'Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice'" to state a claim for relief. *Bixler v. Foster*, 596 F.3d 751, 756 (10th Cir. 2010) (quoting *Iqbal*, 556 U.S. at 678). Also, the complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555 (citations omitted).

## III. Analysis

In its assessment of defendants' motion, the court begins with the claims asserted solely against the Shawnee Mission School District. It then addresses the claims plaintiff has asserted against all five defendants.

A.    **Title IX Claim Against the District**

Count I of the Complaint alleges that the Shawnee Mission School District violated Title

IX.  Title IX provides, "No person in the United States shall, on the basis of sex, be excluded

from participation in, be denied the benefits of, or be subjected to discrimination under any

education program or activity receiving Federal financial assistance."  20 U.S.C. § 1681(a).  The

Supreme Court has held that "a Title IX claim may lie against a school district that receives

federal funding in a case of student-on-student harassment" when two requirements are met.

*M.T. v. Olathe Pub. Sch. USD 233*, No. 17-2710-JAR-GEB, 2018 WL 1847036, at *4 (D. Kan.

Apr. 18, 2018).

These requirements are met when:  (1) the school district "'acts with deliberate

indifference to known acts of harassment in its programs or activities;'" and (2) the alleged

harassment is "'so severe, pervasive, and objectively offensive that it effectively bars the

victim's access to an educational opportunity or benefit.'"  *Id.* (quoting *Davis v. Monroe Cty. Bd.

of Educ.*, 526 U.S. 629, 633 (1999)).  The Circuit put a finer point on this formulation, holding

that "[a] school district may be liable under Title IX provided it (1) has actual knowledge of, and

(2) is deliberately indifferent to, (3) harassment that is so severe, pervasive and objectively

offensive as to (4) deprive access to the educational benefits or opportunities provided by the

school."  *Rost ex rel. K.C. v. Steamboat Springs RE-2 Sch. Dist.*, 511 F.3d 1114, 1119 (10th Cir.

2008) (citing *Murrell v. Sch. Dist. No. 1, Denver, Colo.*, 186 F.3d 1238, 1246 (10th Cir. 1999)).

The District contends, generally, that the Complaint fails to allege these requirements

sufficiently.

*First*, the District argues, the Complaint is insufficient to state a claim because it never

alleges that the District had "actual knowledge" of P.Y.'s sexual assault until after it happened

on February 28 or March 1 of 2017.  But this argument gravely misapprehends the crux of

plaintiff's Title IX claim.  That claim, plaintiff points out in the motion's response, doesn't rely

merely on A.H.'s harassment of P.Y.  Instead, plaintiff argues that the District had "actual

knowledge" of three complaints against A.H. and that it possessed this knowledge before P.Y.'s

assault on February 28, 2017. [2]  *See* Doc. 25 (Plaintiff's Opposition) at 25 (citing Doc. 18

(Second Amended Complaint) at 20 ¶ 106).  The actual knowledge element and deliberate

indifference requirement relate to one another in a critical way.  "[W]hether the School District

was 'deliberately indifferent' to harassment must be assessed as of the date that the School

District had actual notice."  *Olathe Pub. Sch. USD 233*, 2018 WL 1847036, at *4.

Binding precedent accredits plaintiff's theory.  The Tenth Circuit has held that

"harassment of persons other than the plaintiff may provide the school with the requisite notice

to impose liability under Title IX."  *Escue v. N. OK Coll.*, 450 F.3d 1146, 1153 (10th Cir. 2006)

(citing *Gebser v. Lago Vista Indep. Sch. Dist.*, 524 U.S. 274, 290 (1998)).  *Escue* recognizes,

however, that not every allegation of earlier harassment by the same perpetrator will provide the

requisite notice.  Indeed, *Escue* concluded that "the prior instances [of harassment] were 'too

dissimilar, too infrequent, and/or too distant in time' to provide the school with actual knowledge

of sexual harassment in its programs."  *Id.*  Namely, the harasser-professor had dated two non-

traditional students his own age.  Also, the professor—on two occasions almost a decade

earlier—had engaged in significantly different sexual behavior than that alleged in the current

case.  *Id.*  The earlier behavior was a single episode of inappropriate touching and a series of

inappropriate name-callings that, the professor agreed, needed to stop.  The behavior at issue in

*Escue* included several episodes of inappropriate touching and ongoing inappropriate comments.

---

[2]    Plaintiff also alleges that the District knew about sexual harassment and assault at the Shawnee
Mission East High School.

*Id.* The Circuit agreed with the district court that the school "simply did not have the requisite knowledge based on prior complaints to believe that the professor presented a substantial risk of abuse or harassment to students." *Id.* at 1154.

Here, the Complaint is quite different. Unlike the alleged harassment at issue in *Escue*, A.H.'s earlier episodes of harassment were similar, frequent, and close in time to his alleged assault of P.Y. The Complaint alleges that Assistant Principal Peters knew that three other female students had complained about sexual harassment and assault by A.H. Specifically, these students complained that during 2016, on February 23, 2017, and on February 24, 2017, A.H. had touched them in an unwelcome manner and made sexually suggestive remarks to them. These earlier episodes were both frequent and close in time—two allegedly occurred in February 2017, just one week before P.Y.'s alleged sexual assault. Also, these earlier episodes of harassment were similar to the harassment alleged by P.Y. While plaintiff alleges that the assault on P.Y. was more invasive than the earlier episodes, all of the complaints involved unwanted touching.

Also, plaintiff alleges that Assistant Principal Peters—"a school official who possessed the requisite control over the situation," *Murrell*, 186 F.3d at 1247—knew about these complaints. *Escue* recognized that lower courts differ "whether notice sufficient to trigger liability may consist of prior complaints or must consist of notice regarding current harassment in the recipient's programs." *Id.* at 1153. Here, the court need not determine which standard is the correct one because plaintiff's allegations satisfy the more stringent version of the choices— the current harassment one. A.H. purportedly harassed other female students less than a week before he harassed P.Y. Thus, the alleged harassment in the District's programs was current.

And so, plaintiff properly has alleged that the District had actual knowledge about A.H.'s current harassment of female students.

*Next*, the District argues that a single episode of sexual assault cannot be sufficiently pervasive to support a deliberate indifference claim under Title IX.  Doc. 21 at 21.  But, the Complaint alleges far more than that.  It alleges a pattern of harassment—A.H. harassed other female students during 2016 and into 2017.  Because plaintiff has alleged sufficiently that the District knew about these prior episodes of harassment, the court must determine if these instances were "severe, pervasive, and objectively offensive."  *Davis*, 526 U.S. at 652.

> The Supreme Court has instructed courts that they must:
>
> [b]ear in mind that schools are unlike the adult workplace and that children may regularly interact in a manner that would be unacceptable among adults.  Indeed, at least early on, students are still learning how to interact appropriately with their peers.  It is thus understandable that, in the school setting, students often engage in insults, banter, teasing, shoving, pushing, and gender-specific conduct that is upsetting to the students subjected to it.  Damages are not available for simple acts of teasing and name-calling among school children, however, even where these comments target differences in gender.

*Id.* at 651–52 (citation omitted).

Here, plaintiff has alleged that A.H.'s behavior far exceeded the realm of behavior the Supreme Court identified as insufficient to support a cause of action.  Plaintiff has alleged that A.H.'s inappropriate sexual behavior targeted female students for more than one year.  A.H.'s earlier episodes of sexual harassment, as alleged by the Complaint, are "severe, pervasive, and objectively offensive."  *See id.* at 652.

*Third*, the District argues that plaintiff has not pleaded deliberate indifference.  "A district is deliberately indifferent to acts of student-on-student harassment 'only where the [district's] response to the harassment or lack thereof is clearly unreasonable in light of the known circumstances.'"  *Olathe Pub. Schs. USD 233*, 2018 WL 1847036, at *4 (first quoting *Rost*, 511

F.3d at 1121 (citing *Davis*, 526 U.S. at 648); then citing *C.R.K. v. U.S.D. 260*, 176 F. Supp. 2d

1145, 1162 (D. Kan. 2001) (citing *Davis*, 526 U.S. at 648)). "The premise, in other words, is an

official decision by the recipient [of the notice] not to remedy the violation." *C.T. v. Liberal Sch.*

*Dist.*, 562 F. Supp. 2d 1324, 1333 (D. Kan. 2008) (quoting *Gebser*, 524 U.S. at 290).

Once again, the District's argument focuses solely on P.Y.'s assault—only illustrating the

District's response to her assault. It ignores plaintiff's allegations about the District's failure to

respond to prior complaints against A.H. Plaintiff alleges that the District failed to address,

investigate, and remedy the prior complaints against A.H in an effective fashion. Indeed, the

Complaint alleges that SRO Harrison did not know about these episodes, and after he learned

about them, a detective was going to investigate them. Doc. 18 at 5. The court views the

Complaint to allege that the District failed to report the earlier episodes to law enforcement.

Explicitly, it alleges that the District failed to take any disciplinary action in response. *Id.* at 12–

13. The District's alleged failures to report multiple claims of sexual harassment and assault to

law enforcement and to take disciplinary action are "clearly unreasonable in light of the known

circumstances." *See Olathe Pub. Sch. USD 233*, 2018 WL 1847036, at \*4; *see also Rost*, 511

F.3d at 1121 ("The district's response was not clearly unreasonable as school officials

immediately contacted law enforcement officials, cooperated fully in the investigation, and kept

informed of the investigation.").

*Fourth*, the District argues, plaintiff has not alleged facts capable of supporting a finding

or inference that P.Y.'s harassment effectively barred her from receiving access to an educational

opportunity or benefit. The governing cases require plaintiff to allege "sexual harassment of

students that . . . so undermines and detracts from the victims' educational experience, that the

victim-students are effectively denied equal access to an institution's resources and

opportunities." *Davis*, 526 U.S. at 651.  In *Davis*, the Supreme Court held that a mere decline in grades was insufficient to survive a motion dismiss.  *Id.* at 652.  But the dropoff in the victim's grades provided "necessary evidence of a potential link between her education and [the harasser's] misconduct."  *Id.*  The Court added that plaintiff's ability to state a cognizable claim depended "equally on the alleged persistence and severity of [the harasser's] actions, not to mention the Board's alleged knowledge and deliberate indifference."  *Id.*  In short, a plaintiff asserting deliberate indifference must allege that the District's conduct "'had a concrete, negative effect' on [the student's] ability to receive an education."  *Hill v. Cundiff*, 797 F.3d 948, 976 (11th Cir. 2015) (quoting *Davis*, 526 U.S. at 654).

In *Hill*, the Eleventh Circuit reversed a district court's grant of summary judgment to the defendant Board of Education on a Title IX claim for student-on-student sexual harassment.  797 F.3d at 976.  Relevant here, the Circuit concluded that plaintiff had demonstrated existence of a genuine dispute whether the victim was denied access to education.  The uncontroverted facts showed the victim missed time at school, transferred schools, attended counseling sessions, took medication for depression, stopped participating in extracurricular activities, and that her grades suffered.  *Id.*

Here, the Complaint alleges that P.Y. feels shame, fear, and danger; her grades have suffered; she has experienced suicidal thoughts; she has missed time at school; she has lost interest in certain extracurricular activities; and she has had difficulty sleeping.  While the manifestations afflicting P.Y. differ slightly from those afflicting the victim in *Hill*, P.Y.'s allegations of manifest emotional distress have alleged a "concrete, negative effect" on her ability to receive an education.  *See Davis*, 526 U.S. at 654.  She has satisfied the pleading burden.

In sum, plaintiff has alleged a plausible Title IX claim against the District for deliberate indifference.  The court thus denies the District's Motion to Dismiss this claim.[3]

**B.      Section 1983 Claim:  Denial of Substantive Due Process through Policy, Custom, and Practice of Failing to Respond to or Prevent Discrimination and Harassment**

In Count IV, plaintiff alleges that the Shawnee Mission School District denied P.Y.'s substantive due process rights when it failed to adhere to its written policies and respond to A.H.'s earlier episodes of sexual harassment.  When a § 1983 plaintiff asserts a claim for "unconstitutional policy, custom, or practice," the Complaint must allege:  (1) "a continuing, widespread, persistent, pattern of unconstitutional misconduct by the District's employees;" (2) "deliberate indifference to or tacit authorization of such conduct by the District's policymaking officials after notice to the officials of that misconduct;" and (3) "injury by acts taken pursuant to such custom, *i.e.*, that the custom was the moving force behind the constitutional violation." *Lewis v. Blue Springs Sch. Dist.*, No. 4:17-CV-00538-NKL, 2017 WL 5011893, at *12 (W.D. Mo. Nov. 2, 2017) (citing *S.J. v. Kan. City, Mo. Pub. Sch. Dist.*, 294 F.3d 1025, 1028 (8th Cir. 2002)); *see also Stewart v. Bd. of Comm'rs for Shawnee Cty., Kan.*, 320 F. Supp. 2d 1143, 1151 (D. Kan. 2004) (citing *Gates v. Unified School Dist. No. 449 of Leavenworth Cty., Kan.*, 996 F.2d 1035, 1041 (10th Cir. 1993); then citing *Henderson v. Montgomery Cty., Kan., Bd. of Cty. Comm'rs*, 213 F. Supp. 2d 1262, 1276 (D. Kan. 2002)).[4]

---

[3]    The District never challenges that it is a recipient of federal funding.

[4]    Although the Tenth Circuit and our court have assessed § 1983 claims under the Substantive Due Process Clause for unconstitutional policies, customs, or practices, our neighbors in the Western District of Missouri and the Eighth Circuit have conducted an analysis of claims more nearly like the one asserted here.  Specifically, the Western District of Missouri has applied the three-element test common to both Circuits directly to student-on-student harassment claims.  But our court and the Tenth Circuit have not applied the standard to that particular setting.  So, the court uses that authority for its persuasive value here.

In *Lewis*, the court concluded that plaintiff's allegations were sufficient to state a claim when she alleged that:

> [T]he District, including the school board and superintendents, at all times knew or should have known that there existed among administrators, counselors, and teachers a continuing, widespread and persistent pattern of failing to respond appropriately to bullying incidents, including those incidents in which [the victim] or one of his friends was the victim or he was a bystander; and that there was a continuing, widespread and persistent pattern of administrators failing to implement or ensure compliance with the District's anti-bullying policy, rules, regulations and state laws meant to prevent bulling and at minimum ensure that appropriate responses to bulling incidents are made to avoid further harm towards a victim, including students like [the victim] or his friends who were subjected to bullying.  Plaintiff alleges that the District, including the school board and superintendents at all times knew, or should have known, that such failures were causing its students, including [the victim], to suffer deprivation of their rights to a public education, bodily integrity, to be secure and to be left alone, to life, and to substantive due process.  Nevertheless, the District, including the school board and superintendents at all times maintained a practice of inappropriate and impermissible responses to bullying incidents, rejected and did not comply with proven bullying prevention policies and laws, and allowed bullying incidents and culture to go unchecked in the schools.  That the District allowed bullying incidents and culture to go unchecked in the schools, and incidents even increased because employees would not come to the aid of victims and even punished victims for defending themselves, this policy and practice was the moving force behind the deprivation of [the victim]'s rights, and caused or contributed to cause his death.

*Id.* (citation omitted).

Conversely, in *Kansas City, Missouri Public School District*, the Eighth Circuit affirmed the district court's decision granting summary judgment against plaintiff's § 1983 claim.  294 F.3d at 1028.  The Circuit concluded that the plaintiff had failed to establish a genuine dispute whether a pattern of unconstitutional misconduct had occurred when the admissible evidence consisted of just one incident of sexually inappropriate comments by a parent-volunteer occurring at a non-school event held off school district property.  *Id.*  Importantly, the earlier inappropriate behavior was not the same as the behavior alleged by the Complaint.  Also, the summary judgment facts established that, when the principal learned about the behavior, he revoked the parent-volunteer's privileges on campus.  *Id.*

In an earlier case—*Thelma D. By & Through Delores A. v. Bd. of Educ. of City of St. Louis*, 934 F.2d 929 (8th Cir. 1991)—the Eighth Circuit also affirmed a decision granting summary judgment against a § 1983 claim.  There, the Eighth Circuit determined that five prior episodes of alleged misconduct scattered over 16 years were insufficient to establish a "continuing, widespread, persistent pattern of unconstitutional misconduct" as a matter of law. *Thelma D.*, 934 F.2d at 933.  Relevant here, only three of the five episodes were reported to the school and only the first two were reported to the same employee.  The principal received the first and second complaints some nine years apart; an assistant principal received the third complaint during that same year as the second complaint.  *Id.* at 931.  The fourth episode occurred four years later.  Although a different principal knew about the charges against the harasser, no one ever complained to the school and the harasser was acquitted.  A fifth episode came three years after the fourth episode and it produced the lawsuit that included the failure to respond claim.  The Eighth Circuit acknowledged that "[h]indsight lend[ed] an increased and ominous significance to these prior incidents," but they were "relevantly isolated."  *Id.* at 933. Consequently, it affirmed the decision to grant summary judgment against the claim.

Here, plaintiff alleges conduct that falls somewhere between the allegations in *Lewis* and the two claims in *Kansas City, Missouri Public School District* and *Thelma D.*  Namely, plaintiff alleges that the District knew or should have known about alleged sexual assaults occurring at the Shawnee Mission East High School in 2015 and 2016.  At a minimum, plaintiff alleges employees at the high school did not report an assault occurring in 2015.  Plaintiff also alleges that employees at Westridge Middle School—and particularly, Assistant Principal Peters—knew about but failed to report A.H.'s prior sexual assaults in 2016 and 2017.  Finally, and

importantly, plaintiff alleges that Westridge employees did not honor the District's policies governing harassment and misconduct.

In sum, plaintiff alleges four incidents of misconduct by the District's employees that span three years and at two different schools. The allegations that three complaints against A.H. were submitted to Assistant Principal Peters, standing alone, are sufficient to allege "a continuing, widespread, persistent, pattern of misconduct." *See Lewis*, 2017 WL 5011893, at *12. Unlike *Thelma D.*, the Complaint here alleges that the same person knew about all three distinct episodes occurring within a 14-month period. Also, one episode allegedly consisted of a series of episodes occurring repeatedly throughout 2016. The other two earlier episodes occurred in the same week in February 2017. These allegations were not about isolated events separated by nine years. So, the court concludes that the Complaint sufficiently alleges the first element of this claim.

Next, plaintiff must allege the District's officials were deliberately indifferent to this pattern of misconduct. In *Lewis*, the court found plaintiff sufficiently had alleged facts capable of establishing this requirement when she alleged that the District knew about the misconduct but failed to comply with its policies and thus permitted the bullying to continue. 2017 WL 5011893, at *12. Conversely, the Eighth Circuit concluded that *Kansas City, Missouri Public School District*'s plaintiff had failed to show "that school officials were deliberately indifferent to that abuse, much less that school officials tacitly authorized it." It reasoned that school officials "notified child welfare authorities and [the victim's] mother one day after learning of her abuse at the hands of [the harasser]." *Kansas City, Missouri Public School District*, 294 F.3d at 1029.

Here, plaintiff has alleged that District officials—namely, Vice Principal Peters—knew about A.H.'s prior instances of sexual harassment and assault but failed to notify law enforcement. Also, plaintiff alleges that these officials failed to investigate the prior episodes and take disciplinary action. At a minimum, plaintiff alleges, these failures violated the District's harassment and misconduct policies. Like the *Lewis* plaintiff, plaintiff here alleges that A.H.'s behavior went unchecked when school officials failed to comply with the District's policies. Also, plaintiff here alleges more than the plaintiff in *Kansas City, Missouri Public School District*—*i.e.*, that school officials failed to notify law enforcement. Finally, plaintiff alleges, District officials failed to take appropriate action when they learned about the 2015 episode of lewd behavior at the Shawnee Mission East High School. In sum, plaintiff has alleged sufficient factual content to support a reasonable inference that the defendants are liable under a deliberately indifferent theory. *See Lewis*, 2017 WL 5011893, at *12.

Finally, plaintiff sufficiently alleges the third element of the claim—causation. The Complaint alleges: "The District's custom and practice of inaction was a moving force and direct link to the abuse of [P.Y.]" Doc. 18 at 32 ¶ 159. *Lewis* concluded that, when the Complaint alleged that the District's practice of deliberate indifference was "the moving force behind the deprivation of [the victim's] rights, and caused or contributed to cause his death," it sufficiently stated a claim. 2017 WL 5011893, at *12. The Complaint's allegation receives the same result here.

Plaintiff's allegations state a plausible claim for an unconstitutional policy, custom or practice and so, the court denies the District's Motion to Dismiss Count IV.

### C.     Section 1983:  Equal Protection Clause Violation Claim

In the Complaint's remaining claims—Counts II and III—it alleges § 1983 violations by all defendants.  In addition to arguing that plaintiff fails to state a plausible claim, the individual defendants contend they enjoy qualified immunity.  The court first addresses each count against the District.  It then analyzes these claims against the individual defendants with a qualified immunity discussion.

Plaintiff alleges that all defendants violated the Equal Protection Clause.  The Fourteenth Amendment to the United States Constitution provides, "No state shall . . . deny to any person within its jurisdiction the equal protection of the laws."  "Denials of equal protection by a municipal entity or any other person acting under color of state law are actionable under 42 U.S.C. § 1983."  *Murrell*, 186 F.3d at 1249.  Also, the Tenth Circuit has established, "sexual harassment by a state actor can constitute a violation of the equal protection clause."  *Id.* (citing *Starrett v. Wadley*, 876 F.2d 808, 814 (10th Cir. 1989)).

### 1.     Claim Against the District

To assert a claim against a school district for sexual harassment under the Fourteenth Amendment, the plaintiff must allege that "a state employee's discriminatory actions are representative of an official policy or custom of the municipal institution, or are taken by an official with final policy making authority."  *Id.*  A "municipal policy" means a "'policy statement, ordinance, regulation, or decision officially adopted and promulgated by [a municipality's] officers.'"  *Id.* (quoting *Lankford v. City of Hobart*, 73 F.3d 283, 286 (10th Cir. 1996)).  "Absent such an official policy, a municipality may also be held liable if the discriminatory practice is 'so permanent and well settled as to constitute a "custom or usage" with the force of law.'"  *Id.* (quoting *Lankford*, 73 F.3d at 286).

While the Complaint cites several of the District's policies in it allegations, it does not

allege that the policies themselves are discriminatory.  Instead, it alleges that the District has

followed a discriminatory practice.  Such a practice can provide a basis for liability if it is

"sufficiently widespread and pervasive so as to constitute a 'custom.'"  *Id.* at 1250 (citing

*Starrett*, 876 F.2d at 814).  This standard is substantially similar to the test used to determine

whether policy, custom, or practice is unconstitutional under § 1983.  *See Lewis*, 2017 WL

5011893, at *12 (requiring plaintiff to allege, in part, "a continuing, widespread, persistent,

pattern of unconstitutional misconduct by the District's employees").

Plaintiff has alleged that the District's employees failed to report, investigate, or remedy

acts of harassment at the Shawnee Mission East High School and Westridge Middle School.  The

court already has determined that these allegations suffice to assert a continuing, widespread, and

persistent pattern of misconduct supporting an unconstitutional policy, custom, or practice claim.

This same misconduct also alleges a widespread and pervasive practice capable of supporting an

equal protection claim.  *Cf. Murrell*, 186 F.3d at 1250 (holding that one harasser's acts directed

at one victim "[did] not demonstrate a custom or policy of the School District to be deliberately

indifferent to sexual harassment as a general matter.").  Here, the Complaint alleges more.  It

asserts that the District failed to respond properly to complaints from four victims against two

harassers over a three-year period.  Plaintiff has alleged the District followed a discriminatory

practice capable of supporting an equal protection claim.

### 2.    Claim Against the Individual Defendants

Plaintiff also asserts an equal protection claim against the individual defendants.

"Individual defendants named in a § 1983 action may raise a defense of qualified immunity,

which shields public officials . . . from damages actions unless their conduct was unreasonable in

light of clearly established law." *Gutierrez v. Cobos*, 841 F.3d 895, 899 (10th Cir. 2016). "Once

an individual defendant asserts qualified immunity, the plaintiff carries a two-part burden to

show: (1) that the defendant[s'] actions violated a federal constitutional or statutory right, and, if

so, (2) that the right was clearly established at the time of the defendant's unlawful conduct." *Id.*

at 900 (internal quotation marks omitted). "This is a heavy burden. If the plaintiff fails to satisfy

either part of the inquiry, the court must grant qualified immunity." *Carabajal v. City of*

*Cheyenne*, 847 F.3d 1203, 1208 (10th Cir. 2017).

To overcome qualified immunity, plaintiff first must allege that the individual defendants

violated a federal constitutional or statutory right. "[A] governmental official or supervisory

employee may be held liable under § 1983 upon a showing of deliberate indifference to known

sexual harassment." *Id.* When the primary conduct alleged by the § 1983 claim is about a

student, the Tenth Circuit has explained that the requisite state action exists when "'a supervisor

or employer participates in or *consciously acquiesces* in sexual harassment by an outside third

party or by co-workers.'" *Murrell*, 186 F.3d at 1250 (quoting *Noland v. McAdoo*, 39 F.3d 269,

271 (10th Cir. 1994)) (emphasis in original).

"'[L]iability under § 1983 must be predicated upon a "deliberate" deprivation of

constitutional rights by the defendant' and not upon mere negligence." *Id.* (quoting *Woodward*

*v. City of Worland*, 977 F.2d 1392, 1399 (10th Cir. 1992)). To state a claim for "deliberate"

discriminatory conduct, plaintiff must allege sufficiently that "'defendants actually knew of and

acquiesced in'" A.H.'s behavior. *See id.* (quoting *Jojola v. Chavez*, 55 F.3d 488, 490 (10th Cir.

1995)). The Complaint alleges that Superintendent Hinson, Principal McDonnell, Vice Principal

Peters, and Board of Education Vice President Denny knew about A.H.'s prior episodes of

harassment and "acquiesced in that conduct by refusing to reasonably respond to it." *See id.*

*Murrell* concluded that allegations like these were sufficient to state a valid claim and so, similar allegations here also plead a valid conscious acquiescence claim. *Id.* (finding plaintiff "allege[d] that the School District failed to reasonably respond to sexual harassment of which it had actual knowledge . . . . [A] refusal to remedy known sexual harassment is actionable."). This conclusion satisfies the first predicate of plaintiff's burden to overcome qualified immunity. *See Gutierrez*, 841 F.3d at 900 (requiring plaintiff to allege "the defendant[s'] actions violated a federal constitutional or statutory right").

The second prong of qualified immunity requires plaintiff to demonstrate that the individual defendants alleged conduct that "violated clearly established constitutional rights of which a reasonable person in their positions would have known." *Murrell*, 186 F.3d at 1251 (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). "A plaintiff may show clearly established law by pointing to either a Supreme Court or Tenth Circuit decision, or the weight of authority from other courts, existing at the time of the alleged violation." *T.D. v. Patton*, 868 F.3d 1209, 1220 (10th Cir. 2017) (citing *Gutierrez*, 841 F.3d at 900), *cert. denied*, 138 S. Ct. 1270 (2018). The Tenth Circuit explicitly has held that deliberate indifference to "'sexual harassment . . . can violate the Fourteenth Amendment right to equal protection of the laws.'" *Murrell*, 186 F.3d at 1250 (quoting *Woodward*, 977 F.2d at 1398) (ellipsis in original).

In *Murrell*, the Circuit determined that this clearly established right was "sufficiently clear that a reasonable official would understand that what he [was] doing violate[d] that right" because, it concluded, that "other supervisory municipal employees may be held liable under the Fourteenth Amendment for deliberate indifference to the discriminatory conduct of third parties." *Id.* This conclusion "was sufficient to make apparent the unlawfulness of such deliberate indifference by a school employee exercising supervisory authority over students." *Id.*

These explicit rulings convince the court that the individual defendants are not entitled to qualified immunity from plaintiff's § 1983 claim for equal protection violations. The Complaint alleges that the individual defendants did precisely what *Murrell* held they could not do: be deliberately indifferent to sexual harassment.

For these reasons, the court denies defendants' Motion to Dismiss Count II.

**D.    Section 1983: State-Created Danger Claim**

Count III asserts that all defendants violated P.Y.'s substantive due process rights when they deprived her of a liberty interest by creating or increasing the danger of personal violence. To invoke this danger-creation theory, a plaintiff must allege a state actor "'affirmatively act[ed] to create or increase[] a plaintiff's vulnerability to, danger from private violence.'" *Patton*, 868 F.3d at 1222 (quoting *Currier v. Doran*, 242 F.3d 905, 923 (10th Cir. 2001)). If the Complaint makes these threshold allegations, it also must allege that:

1.  the charged state entity and the charged individual actors created the danger or increased plaintiff's vulnerability to the danger in some way;

2.  plaintiff was a member of a limited and specifically definable group;

3.  defendants' conduct put plaintiff at substantial risk of serious, immediate, and proximate harm;

4.  the risk was obvious or known;

5.  defendants acted recklessly in conscious disregard of that risk; and

6.  such conduct, when viewed in total, is conscience shocking.

*Id.* (quoting *Currier*, 242 F.3d at 918).

Here, the Complaint fails to state a due process claim for danger creation because it never alleges that any defendant acted affirmatively to create the danger or increase plaintiff's vulnerability. Instead, it merely asserts that defendants "created 'a dangerous situation or

26

render[ed] [P.Y.] more vulnerable to danger' by *failing to promptly and effectively address and remedy* prior allegations of sexual misconduct against the perpetrator, thereby exposing [P.Y.] to the sexual assault she endured."  Doc. 25 at 24 (quoting Doc. 18 at 21) (emphasis added). Failing to act is not an affirmative act.  So even if defendants failed to act in the fashion the Complaint alleges, that would not violate the Due Process Clause.

In *Patton*, the Circuit recited the salient principles from the Supreme Court's seminal case—*DeShaney*[5]—on the failing-to-act issue.  They are:

> "[N]othing in the language of the Due Process Clause itself requires the State to protect the life, liberty, and property of its citizens against invasion by private actors.  The Clause is phrased as a limitation on the State's power to act, not as a guarantee of certain minimal levels of safety and security."  [*DeShaney*, 489 U.S.] at 195.  Accordingly, "[a]s a general matter . . . a State's failure to protect an individual against private violence simply does not constitute a violation of the Due Process Clause."  *Id.* at 197.

*Patton*, 868 F.3d at 1221.  The Supreme Court reasoned:  "While the State may have been aware of the dangers that [the victim] faced in the free world, it *played no part in their creation*, nor did it do anything to render [her] *any more vulnerable to them*."  *Id.* (quoting *DeShaney*, 489 U.S. at 201) (emphasis in original).  Ultimately, the Court determined, the State had "*placed* [*the victim*] *in no worse position than that in which* [*she*] *would have been had it not acted at all*," and so "the State had no constitutional duty to protect [the victim]."  *Id.* (quoting *DeShaney*, 489 U.S. at 201) (emphasis in original).

Plaintiff's Complaint here has alleged no facts suggesting that any defendant created a dangerous situation or increased P.Y.'s vulnerability.  Instead, it merely alleges that defendants knew about A.H.'s prior episodes of harassment and failed to act in response to them.  Such a "failure to protect an individual against private violence simply does not constitute a violation of

---

[5]    *DeShaney v. Winnebago Cty. Dep't of Soc. Serv.*, 489 U.S. 189 (1989).

the Due Process Clause." *DeShaney*, 489 U.S. at 195.  Moreover, defendants' alleged failure to act did not put P.Y. in a "worse position."  *See id.* at 201.

In sum, plaintiff has failed to allege the precondition for a danger-creation theory—namely, that defendants "affirmatively act[ed] to create or increase[] [P.Y.'s] vulnerability to, danger from private violence."  *See Patton*, 868 F.3d at 1222.  And so, the court grants defendants' Motion to Dismiss Count III.[6]

## IV.   Conclusion

Plaintiff has alleged plausible claims against the District for Title IX and § 1983 violations.  Plaintiff has alleged sufficiently that the District violated P.Y.'s substantive due process and equal protection rights.  He also has alleged a plausible § 1983 claim against the individual defendants for violating P.Y.'s equal protection rights and the individual defendants are not entitled to dismissal for qualified immunity.  Finally, plaintiff has failed to allege a plausible § 1983 claim under a danger-creation theory; the court, therefore, grants defendants' Motion to Dismiss Count III.

**IT IS THEREFORE ORDERED BY THE COURT THAT** defendants' Motion to Dismiss (Doc. 20) is granted in part and denied in part as set forth in full in this Order.

**IT IS SO ORDERED.**

**Dated this 6th day of June, 2018, at Topeka, Kansas.**

s/ Daniel D. Crabtree
**Daniel D. Crabtree**
**United States District Judge**

---

[6]   Because the court reaches this conclusion, it does not address the individual defendants' qualified immunity argument.