IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

T.Y., as Parent and Next Friend
of P.Y., a Minor,

    Plaintiff,

v.

SHAWNEE MISSION SCHOOL
DISTRICT USD 512, et al.,

    Defendants.

Case No. 17-2589-DDC-GEB

## MEMORANDUM AND ORDER

This matter is before the court on plaintiff T.Y.'s Motion for Approval of Minor's Settlement and Distribution of Net Proceeds (Doc. 54). The court applied Kansas substantive law to evaluate the settlement agreement on minor P.Y.'s behalf and held a hearing on the Motion on November 20, 2019. *See* Doc. 59. For reasons explained below, the court grants the motion to approve the settlement agreement on the minor's behalf.

### I. Background

The Amended Complaint (Doc. 18) asserted four claims against defendants Shawnee Mission School District USD 512, Jim Hinson, Jeremy McDonell, Jade Peters, and Craig Denny—claims under 42 U.S.C. § 1983. *See* Doc. 18 at 19–32. On defendants' motion, the court dismissed Count Three of the Amended Complaint. Doc. 27 at 28. On April 29, 2019, the parties reported that they had negotiated a settlement and mutual release resolving the remaining claims. Doc. 54. Their agreement, which plaintiff presented at the settlement approval hearing, stipulates that plaintiff will release "any and all claims, appeals, demands, obligations actions, causes of actions, rights, judgments, damages, costs, losses or services, expenses, and

compensation of any nature whatsoever . . . whether based in tort, contractor, or any other theory of recovery . . . in any way arising out of events occurring during [P.Y.'s] term as a student in the Shawnee Mission School District." Exhibit 2 at 2. Plaintiff's release applies to any claims that minor P.Y. may bring, or be able to bring, once P.Y. reaches the age of majority. In exchange, defendants will pay plaintiff $165,000, on behalf of P.Y., "in full and complete satisfaction of all claims which plaintiffs assert" or could have asserted against defendants. *Id.* at 1.

## II.     Legal Standard

The court predicts that the Tenth Circuit would direct the court to apply Kansas law when, as here, it exercises federal question jurisdiction over a case involving a settlement on a minor's behalf. *Nice v. Centennial Area Sch. Dist.*, 98 F. Supp. 2d 665, 667–69 (E.D. Pa. 2000) (citing *Reo v. U.S. Postal Serv.*, 98 F.3d 73 (3d Cir. 1996)). The court thus borrows Kansas's rule that a court must conduct a hearing before approving a minor's settlement. *Adkins v. TFI Family Servs., Inc.*, No. 13-2579-DDC-GLR, 2017 WL 4338269, at *3–4 (D. Kan. Sept. 29, 2017).

Kansas law requires courts "to exercise extensive oversight, ensuring that the injured minor's claims are not sold short by an agreed settlement merely outlined at a 'friendly' hearing." *White v. Allied Mut. Ins. Co.*, 31 P.3d 328, 330 (Kan. Ct. App. 2001). Courts "'may not simply rely on the fact that the minor's parents have consented to the proposed agreement. Instead, the court must determine whether the agreement is in the minor's best interests.'" *Id.* (quoting *Baugh v. Baugh ex rel. Smith*, 973 P.2d 202, 205 (Kan. Ct. App. 1999)). For example, the Kansas Supreme Court upheld a state trial court's approval of a settlement on a minor's behalf because "it engaged in [a] full examination of [the] facts of [the] accident and [the] extent of [the] minor's injuries." *Id.* (citing *Perry v. Umberger*, 65 P.2d 280 (1937)).

**III.    Analysis**

At the November 20, 2019 hearing, the court received three exhibits from the parties: (1) Petition and Application for Court Approval of Minor's Settlement (Exhibit 1); (2) Settlement Agreement and Release (Exhibit 2); and (3) T.Y.'s bond secured through State Farm Insurance (Exhibit 3). The court used the substantive portion of the hearing to "determine whether the [settlement] agreement is in the minor's best interests" as required by Kansas law. *White v. Allied Mut. Ins. Co.*, 31 P.3d 328, 330 (Kan. Ct. App. 2001). Plaintiff asked the court to (1) approve the settlement agreement and attorney's fees award, and (2) seal the record of the case. The court analyzes each request separately, below.

**A.  The Settlement Agreement**

At the hearing, T.Y. testified that he believes it is in P.Y.'s best interest to resolve her claims against defendants. And, T.Y. testified, he believes the settlement is fair and reasonable. T.Y. testified that continued exposure to the litigation process would be damaging to P.Y. P.Y. was diagnosed with posttraumatic stress disorder and if P.Y. had to endure the spotlight of trial and other legal proceedings, T.Y. believes P.Y. would suffer significant setbacks in her treatment. Because of these concerns, T.Y. had not discussed the settlement with P.Y. T.Y. believes P.Y. will continue to have medical and counseling expenses related to this incident. He believes putting this money aside for P.Y. will help P.Y. pay for those expenses when she is independent.

As T.Y. and counsel explained at the hearing, they believe it would be in P.Y's best interest to focus on therapy and treatment. Based on this assessment, plaintiff's counsel reported, they decided that efforts to continue to litigate the claims against defendants would not be worth the increased risk of damage to P.Y's mental health.

3

After consideration following the hearing, the court concluded that it was not appropriate—in the context of this case—to approve a settlement when the minor didn't know about the settlement. P.Y. is nearing the age of majority status. In the court's judgment, P.Y. likely could apprehend the terms of the settlement, understand the way it affected her legal rights, and meaningfully evaluate it. *See White*, 31 P.3d at 330 (parent's consent to a settlement isn't controlling). The court thus conducted a telephone conference with counsel and shared its conclusion. Counsel appropriately requested a chance to consider the court's view, and submit a response. Now, plaintiff has done so. Plaintiff filed P.Y.'s declaration under seal on January 2, 2020. Doc. 64. In it, P.Y. declares that she knows about the settlement and the terms of the settlement agreement. *Id.* at 1. And, P.Y.'s declaration reports that she "believes the settlement is fair and reasonable" and asks the court to approve the settlement agreement. *Id.* at 2.

Based on the efforts made by T.Y. and, indirectly, by plaintiff's counsel to explain the settlement agreement to T.Y. and P.Y., the testimony from T.Y. and plaintiff's counsel at the November 20, 2019, hearing, and P.Y.'s declaration, the court concludes that the settlement agreement satisfies Kansas law governing approval of such agreements. P.Y., through T.Y., brought a Title IX claim and several § 1983 claims that plaintiff later concluded were inadvisable to pursue. T.Y. agreed to settle P.Y.'s claims to avoid placing P.Y. in the spotlight of trial and possibly reversing years of progress in therapy. T.Y. also testified that the settlement proceeds will be used only for P.Y.'s benefit and likely will assist her with future medical expenses. P.Y. has expressed her approval of the settlement agreement in her declaration. The court thus finds that the settlement agreement between plaintiff and defendants is in P.Y.'s best interest.

Plaintiff also asks the court to approve attorney's fees. The settlement agreement allocates 45 percent of the settlement to attorney's fees. At the hearing, plaintiff's counsel

4

reported that 45 percent is the standard fee agreement her law firm uses for Title IX and § 1983 cases. And, plaintiff's counsel asserts, T.Y.'s fee agreement with her law firm contemplates a 45 percent fee award. The fee agreement uses a graduated scale, with more fees allocated to the law firm as a case progresses through litigation. The court is persuaded that the fee award, though higher than contingent fees charged in other kinds of cases and at the upper range of fee ranges appropriate for a settlement, is a reasonable fee for a Title IX and § 1983 case like this one. The court also notes that T.Y. approved the fee arrangement and he had every incentive to minimize the fee charged in the case. And, to the extent the court's role in approving the settlement derives from Federal Rule of Civil Procedure 17(c), the court finds no apparent conflict between T.Y.'s interests and P.Y's interests, especially where P.Y. is the recipient of the settlement proceeds. The settlement of this case is in P.Y.'s best interest. And, the court finds, the fee award is fair and reasonable.

The court thus grants plaintiff's Motion for Court Approval of Minor's Settlement (Doc. 54) and approves the agreement the parties have memorialized. The court also appoints T.Y., P.Y.s natural father and Next Friend, as Conservator of a restricted account where the settlement proceeds will be placed until P.Y. reaches the age of majority.

### B. The Sealing Request

Plaintiff asks the court to seal the record of the settlement hearing conducted on November 20, 2019 and omit reference to both T.Y. and P.Y.'s name and the amount of the settlement in this Order. The court granted plaintiff's motion on an interim basis at the hearing. Now, this Order finally decides plaintiff's request.

Deciding this confidentiality request begins with the broad legal standard adopted by the Supreme Court and refined by our Circuit. "It is clear that the courts of this country recognize a

general right to inspect and copy public records and documents, including judicial records and documents." *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 597 (1978) (footnote omitted). This right is independent of "a proprietary interest in the document or upon a need for it as evidence in a lawsuit." *Id.* Instead, "[t]he interest necessary to support . . . compel[led] access has been found, for example, in the citizen's desire to keep a watchful eye on the workings of public agencies." *Id.* at 597–98. "Likewise, the common law right to access court records 'is an important aspect of the overriding concern with preserving the integrity of the law enforcement and judicial processes.'" *United States v. Walker*, 761 F. App'x 822, 834 (10th Cir. 2019) (quoting *United States v. Hickey*, 767 F.2d 705, 708 (10th Cir. 1985)).

The confluence of these principles creates "a *strong presumption* in favor of public access," as "the interests of the public . . . are presumptively paramount[ ] [when weighted] against those advanced by the parties." *United States v. Pickard*, 733 F.3d 1297, 1302 (10th Cir. 2013) (emphasis added) (internal quotation marks omitted). But still, the right of public access to judicial records is "not absolute," as "[e]very court has supervisory power over its own records and files," providing it with authority to seal court documents. *Nixon*, 435 U.S. at 598; *see Pickard*, 733 F.3d at 1300. So, "the 'strong presumption of openness can be overcome where countervailing interests *heavily outweigh* the public interests in access.'" *Walker*, 761 F. App'x at 834 (quoting *Pickard*, 733 F.3d at 1302 (emphasis added) (internal quotation marks omitted)). Putting it another way, "[t]he party seeking to seal any part of a judicial record bears the heavy burden of showing that the material is the kind of information that courts will protect and that disclosure will work a clearly defined and serious injury to the party seeking closure." *Id.* (quoting *Miller v. Ind. Hosp.*, 16 F.3d 549, 551 (3d Cir. 1994)). And, "any denial of public access to the record must be narrowly tailored to serve th[e] interest being protected by sealing or

restricting access to the records." *Walker*, 761 F. App'x at 835 (internal quotation marks omitted) (citation omitted).

Here, plaintiff has sued and settled claims with a public school district organized under Kansas law. Plaintiff expressed concern about release of his or P.Y.'s name, given the sensitive nature of the allegations. The court agrees with plaintiff's position. The minor's identity should be protected and finds that plaintiff has met his burden to show that disclosing this information "will work a clearly defined and serious injury" to P.Y. *See Walker*, 761 F. App'x at 834.

But plaintiff has not met his burden to show that the amount of the settlement should be sealed. Plaintiff has settled a dispute with a public school district. The public has a strong interest in information about use of public funds. Plaintiff has not provided a countervailing interest sufficient to exceed the public's interest in access to the amount of the settlement. Consequently, the court declines to seal the amount of the settlement. The court modifies its interim order to seal and seals the portion of any transcript prepared for the hearing on November 20, 2019, that identifies the plaintiff T.Y. or minor P.Y.'s name.

**IT IS THEREFORE ORDERED BY THE COURT THAT** plaintiff T.Y's Petition and Application for Court Approval of Minor's Settlement (Doc. 54) is granted.

**IT IS FURTHER ORDERED THAT** the court appoints T.Y., P.Y.'s natural father and Next Friend, as Conservator of a restricted account wherein P.Y's distribution of the settlement proceeds will be placed until P.Y. reaches the age of majority.

**IT IS FURTHER ORDERED THAT** the plaintiff's request to seal T.Y and P.Y.'s name from the record is granted. But, plaintiff's request to seal the amount of the settlement is denied.

**IT IS SO ORDERED.**

**Dated this 6th day of January, 2020, at Kansas City, Kansas.**

**s/ Daniel D. Crabtree**
**Daniel D. Crabtree**
**United States District Judge**
